UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

CIVIL ACTION NO. 08-65-DCR

JEWELL ROBBINS,                                                                                    PETITIONER,

V.              **MAGISTRATE JUDGE'S REPORT
                AND RECOMMENDATION**

BILLY ROBERTS,
Jailor at Franklin County Detention Center                                         RESPONDENT,

And

COMMONWEALTH OF KENTUCKY,
DEPARTMENT OF FINANCIAL                                                           INTERVENING
INSTITUTIONS                                                                                  RESPONDENT.

## I. INTRODUCTION

Petitioner, Jewell Robbins, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. [R. 1]. Currently incarcerated at the Franklin County Detention Center located at Frankfort, Kentucky, the she challenges her continued detention in state custody, arguing that the state's admission of a recorded conversation into evidence violated the Confrontation Clause of the Sixth Amendment to the United States Constitution, as well as the rule against hearsay. [Id. at 7-8]. The parties have fully briefed the relevant issues and the Petition is now ripe for review. Consistent with local practice, this matter has been referred to the undersigned for preparation of a report and recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

For the reasons stated herein, the undersigned recommends that Robbins' Petition for Writ of Habeas Corpus [R. 1] be DENIED.

## II. FACTUAL & PROCEDURAL BACKGROUND

Sometime in the mid-1980s, Robbins was adjudged to own a 1/8 interest in a tract of land in Beaumont, Texas. [Id.]. In about 2004, she obtained a default judgment against a bank in Duvall County, Texas, which allegedly held royalties owed as a result of oil production on the land. [Id.]. Although the bank no longer existed, Petitioner was advised by attorneys in Texas that there was a possibility of collecting the royalties from the bank's successor. The attorneys allegedly further advised Petitioner that she was entitled to royalties from oil production that was continuing on that land. [Id.]. She then sold interests in her judgment against the bank in order to pay the attorneys to pursue recovery of the unpaid royalties generated by continuing oil production. [Id.]. The Kentucky Department of Financial Institutions ("DFI") learned of her sales and determined that they were actually sales of securities without registration, which Kentucky law prohibits. [Id.]. DFI filed an action against the Petitioner.

On June 12, 2006, the Franklin Circuit Court entered a Voluntary Permanent Injunction Order, enjoining the Petitioner from "selling any type of securities, including but not limited to, sales or assignments of partial interests in litigation or judgments..." [R. 12 at 2]. The order further provided that "[i]f the [DFI] believes that any of the Respondents have failed at any time to abide by the terms of this permanent injunction, it shall file a motion with this Court, with adequate notice to the Respondents, for hearing to determine whether a Respondent is in contempt." [Id.].

After the Court entered the injunction, certain individuals who had purchased interests from Petitioner sold them and directed the buyers to make the checks payable to her. [R. 1 at 3]. Upon learning of the purchases, DFI filed a Motion to hold Petitioner in Contempt of Court. [Id.]. An evidentiary hearing was held on May 10, 2007, to determine whether Robbins violated the injunction. [Id.]. At the hearing, she admitted to the facts giving rise to the violation, but denied

2

knowing that the sales were a violation at the time they occurred. [Id.].

Following the evidentiary hearing, the Franklin Circuit Court entered an Order finding the Petitioner in contempt of court for violating the Voluntary Agreed Order. [R. 12 at 2]. The Court found that her conduct was a "willful, knowing violation" of the injunction and sentenced her to serve 120 days in the Franklin County Jail. [Id.]. The Court suspended the jail sentence, however, pending no further violations of the injunction. [Id. at 3]. The Court warned the Petitioner that "[i]f the Order of June 12, 2006, or the present Order is disobeyed, [she] will be jailed for contempt of court." [R. 8 at 57]. Thereafter, periodic reviews were held to monitor her compliance with the injunction. [R. 1 at 3].

For unknown reasons, a Louisville reporter, Ms. Charla Young, began regularly attending the Petitioner's appearances in court. [Id. at 4]. In April, 2008, Ms. Young recorded a telephone conversation she had with a man named William Jackson from Pennsylvania, who purported to be a minister or reverend. [Id.]. During the conversation, Ms. Young posed as an investor wishing to send a $25,000.00 check to Robbins through Jackson. [Id.]. While Ms. Young was on the telephone line, Mr. Jackson called the Petitioner via three-way and told her that "everything [was] in agreement" regarding "the, uh, funds" and that "I, uh, also talked to, uh, Zadey and we were going to do that system that's in place." [Id. at 15]. After Mr. Jackson ended the telephone conversation, Ms. Young called him back and expressed frustration that Petitioner did not expressly state that she would accept the money. [Id. at 16]. Mr. Jackson responded that the Petitioner could not say certain things because she knew that her phone-line was being tapped. [Id. at 17]. He then revealed that he was attempting to funnel money to the Petitioner without arousing the Court's suspicion:

"[W]hat we have to do now, because what we did is we opened an account for her

3

> but is not in her name. Because we don't want nothing to be linked to her to show that she's selling these agreements and shares. So what we did was, you know, get the account set up, uh, in our name which means that what we done is we've given her a Visa card on it, on that account, you know, its like I open a bank account for you..."

[Id. at 18].

In June, 2008, DFI obtained a copy of the recorded conversation. [R. 12 at 3]. On June 30, 2008, it filed a motion requesting the Court hold Robbins in contempt and impose the jail sentence of 120 days for violating the injunction. [R. 1 at 4]. At the evidentiary hearing, Ms. Young took the stand and testified that the recording was authentic. [R. 12 at 3]. DFI thereupon offered as proof, over Petitioner's hearsay objection, the recorded conversation. [R. 1 at 4-5]. The Court admitted the tape into evidence and played it in open court. [Id.]. DFI did not provide any other physical evidence to the Court. [Id. at 5]. After hearing the tape, the Court held Petitioner in contempt and imposed the suspended sentence of 120 days of incarceration. [Id.].

On July 17, 2008, the Petitioner filed a Notice of Appeal [R. 8-2], a Motion for Writ of Prohibition and Emergency Relief [R. 8-3], and a Motion for Intermediate Relief with the Kentucky Court of Appeals. [R. 8-4]. As grounds for the writ of prohibition, she argued that by admitting the recorded conversation into evidence, the trial court violated her right to confront witnesses under the Sixth Amendment to the United States Constitution, and the rule against hearsay. [R. 8-3 at 2-4]. As grounds for emergency relief, she cited the fact that she was seventy-five (75) years old, in poor health, and had to be transported to a hospital after being placed in custody. [Id. at 4].

The Kentucky Court of Appeals denied Petitioner's Motion for Emergency Relief, noting that "[n]othing alleged in the initial emergency motion satisfies the criteria for a grant of such extraordinary relief. Age alone is not a sufficient factor for relieving a party from the consequences

of contempt of court orders." [R. 8-8 at 1]. In addition, the Kentucky Court of Appeals denied Petitioner's Motion for a Writ of Prohibition and Motion for Intermediate Relief. [R. 8-9]. The Court denied the Motion for a Writ of Prohibition for failure to demonstrate the lack of an adequate remedy by appeal or the existence of irreparable injury. [Id. at 2]. In denying the Motion for Intermediate Relief, the Court noted that if Petitioner had provided the trial court with the appropriate medical information, it must have found that her medical condition did not preclude incarceration. [Id. at 2-3]. Petitioner thereupon filed a Motion to Reconsider [R. 8-14], arguing that the Court had failed to address her main argument as to why the writ of prohibition should be granted:

> "The predominant reason why the Appellant believes that the Writ of Prohibition should be granted and her incarceration stayed pending this appeal of this matter is that there is a serious constitutional issue involving the confrontation clause. The Appellant's Motion for Writ of Prohibition sets forth her argument that the only evidence admitted by the trial court to hold her in contempt was clearly hearsay. Further, the trial court held that the evidence was an exception to the hearsay clause because there was some sort of agency between the declarant and the Appellant. The Appellant maintains that there is no such statement in the transcript and, even if there were, it is unlawful to use a statement within hearsay to authenticate hearsay. Again, this argument was made in Appellant's Writ."

[Id. at 1-2]. The Kentucky Court of Appeals denied Petitioner's Motion to Reconsider on September 16, 2008. [R. 8-16]. It noted that "the Court cannot reach the Confrontation Clause issue and issues concerning sufficiency of the evidence without the criteria for extraordinary relief having been met. [Id. at 2].

Petitioner filed an appeal and an Emergency Motion for a Stay with the Kentucky Supreme Court. [R. 8-10]. The Supreme Court found the issue to be moot as the Court of Appeals had already entered a judgment in the matter. [R. 8-13].

5

With the Appeal to the Kentucky Court of Appeals still pending, Petitioner filed a Petition for Writ of Habeas Corpus [R. 1] with this Court on September 5, 2008. [R. 8 at 3]. Petitioner argues that the state's admission of the recorded conversation into evidence violated the Confrontation Clause of the Sixth Amendment to the United States Constitution, as well as the rule against hearsay. [Id. at 6-8]. Petitioner further contends that she has exhausted all available state remedies. [Id. at 6].

DFI filed a Motion to Intervene on September 26, 2008 [R. 9], which this Court granted. [R.10]. DFI filed a Response to Application for Writ of Habeas Corpus [R. 12], wherein it argued that "[c]ontrary to Robbins' assertions, she has an active appeal in state court and has not exhausted the available remedies...". [Id. at 2]. Petitioner filed a Reply to DFI's Response [R. 13], reiterating that she had exhausted all available state remedies, as she fairly presented her constitutional issue to both the Kentucky Court of Appeals and the Kentucky Supreme Court. [Id. at 5]. The matter being fully briefed, it is ripe for adjudication.

III. ANALYSIS

A state prisoner must ordinarily exhaust all available state remedies prior to seeking a federal writ of habeas corpus. 28 U.S.C. § 2254(b), (c). To satisfy the exhaustion requirement, a Petitioner must "fairly present" her claims to the state's highest court, thereby giving it a "full and fair opportunity to rule on the petitioner's claims." See Baldwin v. Reese, 541 U.S. 27, 29 (2004); Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994). The Petitioner bears the burden of proving that she exhausted state remedies. Caver v. Straub, 349 F.3d 340 (6th Cir. 2003).

In the present case, Petitioner presented her constitutional claim in a Motion for a Writ of Prohibition, though neither the Kentucky Court of Appeals nor the Kentucky Supreme Court

6

addressed the claim's merits. She argues that her efforts to secure a writ of prohibition satisfies the exhaustion requirement. [R. 13 at 5]. DFI argues that Petitioner has not exhausted all available state remedies, as she has an active appeal in the Kentucky Court of Appeals challenging her conviction. [R. 12 at 2].

The U.S. Supreme Court has held that a petitioner's inclusion of a constitutional claim in a motion for a writ of prohibition does not serve to exhaust state remedies. In <u>Pitchess v. Davis</u>, 421 U.S. 482 (1975), the U.S. District Court for the Central District of California issued a conditional writ of habeas corpus, ordering the release of the petitioner unless the state provided him with a laboratory report and retried him within sixty days. <u>Id.</u> at 483. At retrial, the state informed the petitioner that certain evidence which had been available at the first trial was destroyed as a matter of police routine. <u>Id.</u> at 484. He thereupon filed a motion to dismiss the charges, which the state court denied. <u>Id.</u>

The petitioner filed an application for a writ of prohibition in the California Court of Appeals on grounds of destruction of physical evidence. <u>Id.</u> at 488. He also filed a motion with the U.S. District Court seeking to modify its prior conditional grant of habeas corpus into an absolute grant. <u>Id.</u> a t 485. While the latter motion was pending, the California Court of Appeals and the California Supreme Court denied the petitioner's application for a writ of prohibition. <u>Id.</u> The U.S. District Court thereupon granted his motion for an absolute writ of habeas corpus. <u>Id.</u>

The Ninth Circuit Court of Appeals affirmed, finding that the petitioner's effort to secure a writ of prohibition satisfied the exhaustion requirement. <u>Id.</u> at 485-86. The U.S. Supreme Court disagreed, and held that the petitioner's presentation of his constitutional claim in a motion for a writ of prohibition did not constitute sufficient exhaustion:

7

> "In California, it is well established that a writ of prohibition is an extraordinary writ, whose use for pre-trial review is normally limited to 'questions of first impression and general importance.' The denial of an application for writ of prohibition does not constitute, and cannot be fairly read as, an adjudication on the merits of the claim presented. Inclusion of an asserted point of error in a denied pretrial application for writ of prohibition does not bar raising the same points on post-trial direct appeal.
>
> In Ex parte Hawk, 321 U.S. 114 (1944), we held that denial of an application for an extraordinary writ by state appellate courts did not serve to exhaust state remedies where the denial could not be fairly taken as an adjudication of the merits of claims presented, and where normal state channels for review were available. In the instant case, denial by state appellate courts of respondent's applications cannot be fairly taken to be an adjudication of the merits of his claim and full post-trial appellate review is available if respondent is convicted. On these facts, the denial of respondent's applications did not serve to exhaust his available state remedies."

Id. at 488. See also Davis v. Lansing, 851 F.2d 72,75 (2nd Cir. 1988) (holding that denial of pretrial application for writ of prohibition was not sufficient to exhaust state remedies); Tooten v. Shevin, 493 F.2d 173,176 (5th Cir. 1974) (holding that petitioner's effort to secure a writ of prohibition did not constitute sufficient exhaustion).

In a case analogous to Pitchess, the U.S. Supreme Court held that a petitioner's inclusion of a constitutional claim in a motion for allocatur did not satisfy the exhaustion requirement. In Castille v. Peoples, 489 U.S. 346 (1989), a petitioner filed two petitions for allocatur with the Pennsylvania Superior Court. Id. at 347. Pursuant to Pennsylvania law, allocatur-review "is not a matter of right, but of sound judicial discretion" and will be granted "only when there are special and important reasons therefore." Id. The Pennsylvania Superior Court denied the motions for allocatur without opinion. Id.

The petitioner thereupon filed an application for a writ of habeas corpus in the US. District Court for the Eastern District of Pennsylvania. Id. at 347-48. The District Court denied relief for failure to exhaust state remedies. Id. at 348. On appeal, the Third Circuit Court of Appeals reversed,

8

finding that the petitioner's inclusion of a constitutional claim in the petitions for allocatur satisfied the exhaustion requirement. Id. The U.S. Supreme Court reversed, holding that the petitioner failed to exhaust all available state remedies:

> "Although we have rejected a narrow interpretation of § 2254(c), we have not blue-penciled the provision from the text of the statute. It is reasonable to infer an exception where the State has actually passed upon the claim, as in Brown; and where the claim has been presented as of right but ignored (and therefore impliedly rejected), as in Digmon. In both those contexts, it is fair to assume that further state proceedings would be useless. Such an assumption is not appropriate, however - and the inference of an exception to the requirement of $2254(c) is therefore not justified - where the claim has been presented for the first and only time in a procedural context in which its merits will not be considered unless 'there are special and important reasons therefore,' Pa.Rule AppProc I1 14. Raising the claim in such a fashion does not, for the relevant purpose, constitute "fair presentation." See Ex Parte Hawk, 321 U.S. 114 (1994) (application to Nebraska Supreme Court for original writ of habeas corpus does not exhaust state remedies); Pitchess v. Davis, 421 US. 482 (1975)(per *curium)* (motions to the California Court of Appeal and the California Supreme Court for a pre-trial writ of prohibition do not exhaust state remedies). It follows from what we have said that it was error for the Court of Appeals to rest a conclusion of exhaustion upon respondent's presentation of his claims in petitions for allocatur."

Id. at 351.

In light of the foregoing case-law, the Court finds that Petitioner has not satisfied the exhaustion requirement. Under Kentucky law, writs of prohibition are "such an extraordinary remedy that Kentucky courts have always been cautious and conservative both in entertaining petitions for and in granting such relief." Newell Enterprises. Inc. v Bowling, 158 S.W.3d 750,754 (Ky. 2005) (internal citations omitted). In the present case, the Kentucky Court of Appeals found that Petitioner was not entitled to such a writ because she failed to demonstrate the lack of an adequate remedy by appeal or the existence of irreparable injury. [R. 12 at 80-81]. Moreover, the Court explicitly stated that it ''cannot reach the Confrontation Clause issue and issues concerning

9

sufficiency of the evidence without the criteria for extraordinary relief having been met." [Id. at 138]. Under these circumstances, the Court finds that Petitioner did not fairly present her constitutional claim. As in Pitchess, the denial of her motion cannot be fairly taken as an adjudication of the merits of her claim, and normal state channels for review are available. Indeed, the Kentucky Court of Appeals has yet to make a ruling on Petitioner's appeal from the Franklin Circuit Court's order of contempt. Thus, she has not exhausted all available state remedies.

Petitioner cites Rudolph v. Parke, 856 F.2d 738, 739 (6th Cir. 1988) in support of her argument that she satisfied the exhaustion requirement. In Rudolph, the Kentucky Supreme Court failed to address, on appeal, a constitutional claim presented by the petitioner in a reply brief and a petition for re-hearing. Id. at 740. The petitioner thereupon filed an application for a writ of federal habeas corpus. Id. The Sixth Circuit Court of Appeals held that he exhausted all available state remedies, noting that "[i]t is settled law in this circuit that a constitutional claim which is presented to the state courts, regardless of whether they address or dispose of it, will satisfy the exhaustion requirement." Id. at 739.

Rudolph is easily distinguishable from the case at bar. Unlike the petitioner in Rudolph, Petitioner presented her constitutional claim in a motion for extraordinary relief which Kentucky courts have been "cautious and conservative" in entertaining and granting. Moreover, unlike the petitioner in Rudolph, she has an active appeal in state court. Thus, the Court finds Rudolph to be inapposite to the present case.

Because Petitioner has not exhausted all state remedies, the Court recommends that her Application for Writ of Habeas Corpus [R. 1] be denied.

IV. CONCLUSION

Having considered the matter fully, and for the reasons stated above, it is hereby RECOMMENDED that the Petition for Writ of Habeas Corpus [R. 1] be DENIED.

Specific objections to this Report and Recommendation must be filed within ten (1 0) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628,632 (6th Cir. 2001); Bituminous Cas. Corm v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909,912 (6th Cir. 2004); Miller v. Currie, *50* F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within ten (10) days after being served with a copy thereof. 28 U.S.C. § 636(b)(l)(C); Rule 72(b), Fed. R. Civ. P.

Signed October 24, 2008.



Signed By:
*Edward B. Atkins* ℰβA
**United States Magistrate Judge**

11